```
                THE UNITED STATES DISTRICT COURT
                            FOR THE
                      DISTRICT OF VERMONT
```

GARY TUORILA and JUDITH      ]
TUORILA,                     ]
        Plaintiffs,          ]      Civil No. 2:07-CV-00240
                             ]
        v.                   ]
                             ]
MATTHEW FARGO,               ]
        Defendant.           ]

**MEMORANDUM AND ORDER**

Plaintiffs Gary and Judith Tuorila filed a complaint against Matthew Fargo for money damages in connection with his services to obtain and finance telecommunications systems for the Tuorilas. At a pretrial conference in this Court on August 12, 2009, Matthew Fargo raised the concern that his judicial estoppel affirmative defense should be addressed by the Court before trial. The Court afforded Fargo an opportunity to file a Motion for Summary Judgment solely to resolve the judicial estoppel issue. Fargo filed his Motion for Summary Judgment and the Tuorilas responded by filing a Motion to Strike Summary Judgment Arguments and Statements of Undisputed Material Facts and Memorandum of Law in Support. For the reasons below, the Motion for Summary Judgment is **denied**, and the Motion to Strike is **granted.**

**I. Factual Background**

For the purposes of Summary Judgment, the facts are viewed

in the light most favorable to the non-moving party. *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). In November 2007, the Tuorilas filed a complaint with this Court against Matthew Fargo. The Tuorilas are residents of Florida and Fargo is a resident of Vermont. The Tuorilas initiated this action against Fargo for money damages, alleging wrongful conduct in the course of Fargo's employment as a consultant, assisting them to obtain and finance telecommunications systems for the Tuorilas.

In 1998 the Tuorilas founded Homebound Mortgage Inc., (hereinafter Homebound) a business of brokering and underwriting residential mortgages. Just prior to incorporating Homebound, Mr. Tuorila inquired at Lucent Technologies about a telephone system for the business, and was assisted by Fargo, who was then a Lucent employee. Fargo obtained a telephone system for the Tuorilas from Lucent, and secured financing for the system from CIT Communications Finance Corporation (hereinafter CIT). Fargo later became an independent contractor for Lucent, and at the time these events occurred was operating his own telecommunications consulting business. His services included providing communication systems and assistance in obtaining financing for these systems. The Tuorilas continued to rely on Fargo's services as their communication system demands grew.

Homebound secured five separate communications systems financed through CIT from 1998 to 2004, each negotiated and

otherwise organized by Fargo.  The terms of these agreements were set forth in lease agreements and schedules.

The Tuorilas, assisted by Fargo, executed personal and continuing guaranties to the first three communications systems.  In early 2003 Mr. Tuorila told Fargo he did not want to guaranty the next upgrade to the G3R communications system.  Fargo communicated the Tuorilas' required term to CIT.  Mr. Tuorila was unaware that the existing personal guaranties that had already been executed were continuing guaranties that would bind future purchases. There was no discussion of this fact at any point.

On January 30, 2003 CIT sent Fargo an email outlining the lease conditions for the G3R system.  The outline contained no personal guaranty condition.  The next day CIT sent Fargo a "Green Sheet" relating to the terms and conditions of the lease financing.  The Green Sheet indicated that a personal guaranty was required.  Fargo called CIT and cleared up the inconsistency, stating that the Tuorilas would not sign a personal guaranty.  CIT then issued a new Green Sheet that did not include the personal guaranty condition.  The documents for final approval for the G3R lease did not include a personal guaranty, and Homebound entered the lease agreement in March of 2003.

In the spring of 2004 Homebound ceased operating and stopped making its monthly payments to CIT.  On October 29, 2009 CIT commenced litigation against Homebound in the United States

District Court for the District of New Jersey based on allegations that the Tuorilas were personally liable on two of the lease agreements, one of which was the G3R agreement.  Both of the agreements in dispute were negotiated and executed by Fargo.  CIT sought more than $791,000.00 from the Tuorilas.

CIT and the Tuorilas filed Cross-motions for Summary Judgment.  CIT sought Summary Judgment for all amounts owed on all leases, including the G3R lease, relying on the continuing and personal guaranties signed by Gary and Judith Tuorila.  The Tuorilas opposed CIT's Motion arguing that the undisputed facts showed that CIT had agreed to waive the personal guaranties when the parties entered into the G3R lease transaction.

On October 12, 2006, the New Jersey Court found the Tuorilas personally liable on one of the leases, but denied CIT's Motion for Summary Judgment on its claim for enforcement of their guaranties on the G3R lease.  The Court found that a genuine issue of material fact existed as to whether the parties shared a clear intention to waive the personal guaranty in connection with the G3R lease.  Subsequently, CIT and the Tuorilas settled their dispute.  In the settlement the Tuorilas released CIT and its current and former agents of liability, claims, demands, actions or causes of action that were or could have been asserted in the New Jersey action.

In 2007 the Tuorilas filed suit against Fargo in this Court

for improper actions in negotiating and executing the leases with CIT, raising counts of breach of contract, breach of good faith and fair dealing, negligent misrepresentation, and consumer fraud.  A pretrial conference was held on August 12, 2009, at which Fargo was permitted to file a Motion for Summary Judgment on his affirmative defenses of judicial estoppel.

## II. Discussion

### A. Motion for Summary Judgment

Summary Judgment is appropriate when the Court determines that there are no genuine issues of material fact, and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-8 (1986); *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). When deciding if there is a genuine issue of material fact, the Court must interpret all ambiguities and draw all factual inferences in favor of the nonmoving party.  *Salahuddin*, 467 F.3d at 272.  The moving party bears the initial burden of showing why it is entitled to summary judgment, and "summary judgment cannot be entered on the basis of factual statements only in the parties' briefs."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

5

which that party will bear the burden of proof at trial." *Id.* at 322.

Fargo argues that the Tuorilas successfully took positions in the New Jersey action that are inconsistent with the positions they are now taking. He contends that summary judgment is proper because the Tuorilas are judicially estopped from establishing facts essential to their claims and there are no material facts in dispute.

Judicial estoppel is an equitable doctrine that is intended to protect the integrity of the judicial process by prohibiting parties from changing their positions. *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001). Judicial estoppel is appropriate where 1) the party against whom judicial estoppel is being asserted advanced an inconsistent factual position in a prior proceeding, and 2) the court in the prior proceeding accepted the previous assertion in some way. *Rodal v. Anesthesia Group of Onodaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004).

Factors that a court typically considers in deciding whether to apply the doctrine of judicial estoppel in a particular case include: 1) whether a party's later position is clearly inconsistent with its earlier position; 2) whether the party successfully persuaded a court to accept their earlier position such that the court's acceptance of an inconsistent position in a later proceeding would create a perception one of the courts had

been misled; and 3) whether the party asserting an inconsistent position would obtain an unfair advantage if not estopped. *New Hampshire*, 532 U.S. at 750-51.

Fargo's first judicial estoppel argument is that the Tuorilas released Fargo when they settled the New Jersey litigation and released CIT.  Fargo states that the Tuorilas took the position before the New Jersey Court that he was CIT's agent, citing an excerpt from a footnote in the Tuorilas' brief in opposition to CIT's Motion For Summary Judgment.  Fargo contends that the Tuorilas are now judicially estopped from taking the position that he was not an agent of CIT.  The Tuorilas argue that they did not represent to the New Jersey court that Fargo was an agent of CIT.

The Tuorilas did not take the position, nor were they successful in persuading the New Jersey court, that Fargo was an agent of CIT.  In the quoted footnote the Tuorilas discuss New Jersey law of ratification and the fact that CIT may be bound by Fargo's acts.  They argued that while Fargo may not have been an agent of CIT, he did act on their behalf.

In denying CIT's Motion for Summary Judgment, the New Jersey court did not rely on a theory of agency.  The court instead concluded that there was a genuine issue of fact as to whether CIT had waived the personal guaranties on the G3R lease.  The Tuorilas were found personally liable on the other lease that

included a personal guaranty.

    The Tuorilas argue in this litigation that Fargo is liable for the money they paid in their settlement with CIT because Fargo misrepresented their interests when dealing with CIT. In the New Jersey litigation the Tuorilas argued that CIT had agreed to waive the personal guaranties. These two positions, that Fargo misrepresented their interests and that CIT had agreed to waive the personal guaranties, are not clearly inconsistent. The Tuorilas did not successfully take the position that Fargo was an agent of CIT and the New Jersey Court did not rely on agency theory in its decision to deny CIT Summary Judgment on the G3R lease.

    Fargo's second judicial estoppel argument is that the Tuorilas successfully asserted in the New Jersey litigation that Fargo had no reason to believe that CIT intended to rely on the continuing guaranties. He contends that the Tuorilas are now estopped from taking the position in this litigation that Fargo negligently misrepresented the Tuorilas' ongoing liability on the leases.

    This argument fails for reasons similar to the first judicial estoppel argument. The Tuorilas' position that Fargo was negligent is not inconsistent with any position taken in the prior litigation. Whether Fargo knew or did not know CIT's intentions, the Tourilas here argue that Fargo should not have

allowed CIT to mislead them. Further, the New Jersey court did not rely on a claim that Fargo could not have known CIT's intentions about the prior guaranties in making its decision that an issue of material fact existed. Fargo's knowledge was not at issue.

Thus, in the present litigation, the Tuorilas are not estopped from asserting their claims against Fargo, as Fargo is not covered by the settlement release. The Tuorilas are also not estopped from asserting negligence on Fargo's part because he may not have known about CIT's intentions. Therefore, Summary Judgment is not appropriate.

**B. Plaintiffs' Statement of Undisputed Facts and Motion to Strike Summary Judgment Arguments**

The Tuorilas argue that Fargo's Motion for Summary Judgment should be denied because the arguments raised in the Motion go beyond the scope of what the Court permitted at the August 12, 2009 pretrial conference, and that the arguments properly before the court are without merit. In the pretrial hearing the parties agreed, and this Court allowed Fargo extra time to file a Motion for Summary Judgment. However, the Court specifically limited Fargo's Motion to the issues of judicial estoppel that Fargo raised at the pretrial conference. The Court **grants** the Motion to Strike to the extent that Fargo's Motion for Summary Judgment raised additional summary judgment arguments not related to

judicial estoppel as well as the Statement of Undisputed Facts used to support those arguments.

Dated at Burlington, Vermont this 19th day of February, 2010.

                                             <u>/s/ William K. Sessions III</u>
                                             William K. Sessions III
                                             Chief Judge